CITED *in Hoy v. Bramhall,* 4 *C. E. Gr.* 572 *; Coleman v. Barklew,* 3 *Dutch.* 359.

---

Between ASA C. DUNHAM, NEHEMIAH DUNHAM and AZA-RIAH W. DUNHAM, appellants, and JAMES B. COX, re-spondent.

That a judgment and execution creditor may maintain a bill in a court of equity to remove out of the way fraudulent encumbrances placed by a debtor upon his property, in order that the property may be appropriated free from such fraudulent encumbrances to the satisfaction of the credi-tor's judgment, is well established.

2 o *

When a creditor has by a judgment established his debt, by the statute he acquires a lien upon all the real estate of his debtor to satisfy his debt. If the debtor has fraudulently conveyed away or encumbered his real estate, so as to interpose an obstacle which embarrasses the debtor in appropriating it by legal process in satisfaction of his debt, then the creditor may file his bill to remove out of the way such fraudulent conveyance or encumbrance. It is not necessary for him to take out execution upon his judgment. It is, perhaps, most advisable for him to do so ; it may avoid a contest with a subsequent execution creditor.

But if it is the *personal* property of the debtor which the creditor wishes to reach and appropriate to the payment of his judgment, he must take out an execution upon his judgment before he can exhibit his bill ; for it is by the *execution*, and not by the *judgment*, that he acquires a lien upon the personal property.

It is not enough for the bill to show that the debtor has made a fraudulent disposition of any particular portion of his property to entitle the creditor to the aid of a court of equity ; he must show that such disposition embarrasses him in obtaining satisfaction of his debt. Facts must be stated from which, at least, the inference may be drawn that the aid of a court of equity is required to give the judgment its legal and full effect.

Bill defective on demurrer.

On the 3d day of April, 1850, James B. Cox, the respondent, filed his bill in the Court of Chancery of New Jersey against the above named appellants.

The bill sets forth, that he (the said James B. Cox), having a just and lawful claim against one Asa C. Dunham, of Clinton, in the county of Hunterdon, in said state, amounting to about twelve hundred dollars, of principal and interest, upon three several promissory notes of the following descriptions, to wit : one note for four hundred dollars, bearing date the twenty-third day of October, eighteen hundred and thirty-three, made and executed by the said A. C. Dunham to your orator, and payable three months after date. The second note, bearing date the fifth day of November, eighteen hundred and thirty-three, for three hundred dollars, made by one Bray and Taylor to the said Asa C. Dunham, or order, and on the same day endorsed and delivered by the said Asa C. Dunham to your orator. The third note, made by the said Bray and Taylor to the said Asa C. Dunham, on the twenty-second day of September, eighteen hundred and thirty-

two, for four hundred dollars, payable on the fourth day of October then next, and by the said Asa C. Dunham, on the same day, endorsed and delivered to your orator. Your orator commenced a suit in the Supreme Court of Judicature of said state, in the term of November, eighteen hundred and thirty-four, for the recovery of said notes. That afterwards, to wit, at a Circuit Court, held in May, eighteen hundred and thirty-five, at Flemington, in said county, the said Asa C. Dunham, by Alexander Wurts, esquire, his attorney, relinquished the plea by him pleaded in said cause, and consented that judgment should be rendered in said cause in favor of your orator, and against the said Asa C. Dunham, for the sum of one thousand two hundred nineteen dollars and twenty-one cents, besides costs to be taxed. And your orator further shows unto your honor, that afterwards, to wit, at a term of the said Supreme Court, held at Trenton on the ——— day of May, eighteen hundred and thirty-five, in the term of May, by the consideration and judgment of the said court, your orator recovered against the said Asa C. Dunham the sum of one thousand two hundred and nineteen dollars and twenty-one cents, damages, so as aforesaid acknowledged, and also the further sum of forty dollars and seventy-eight cents, for your orator's costs and charges by your orator in and about the said suit in that behalf expended, which were adjudged to your orator by the said court, whereof the said Asa C. Dunham is convicted, as appears by the record of the said judgment, now in the office of the clerk of said court at Trenton, in the said state of New Jersey, or by an exemplified copy thereof, now in the possession of your orator, and ready to be produced when and where this honorable court shall direct, reference being thereunto had will more fully and at large appear, and to which your orator, for greater certainty, prays leave to refer.

And your orator further shows unto your honor, that the said judgment, so recovered in manner aforesaid

against the said Asa C. Dunham, still remaining in full force and virtue and effect, and not satisfied of record nor in any manner vacated, and the said sum of money remaining due and unpaid, your orator, by his attorney, Thomas A. Hartwell, for the purpose of obtaining satisfaction, of the said judgment, sued out of the said Supreme Court a writ of *fieri facias de bonis et terris*, tested of the term of May, eighteen hundred and thirty-five, and returnable to the term of September then next after, directed to the sheriff of the said county of Hunterdon, by which said writ the said sheriff of said county of Hunterdon was commanded, that of the goods and chattels of the said Asa C. Dunham, in his county, he should cause to be made the sum of one thousand two hundred and fifty-nine dollars and nineteen cents, damages, to satisfy the said judgment so recovered by your orator against the said Asa C. Dunham as aforesaid ; and if sufficient goods and chattels of the said Asa C. Dunham could not be found in said county, that then the said sheriff was further commanded, that he should cause the whole, or the residue, as the case might require, of the said damages to be made of the lands, tenements, hereditaments, and real estate whereof the said Asa C. Dunham was seized on the twelfth day of May, eighteen hundred and thirty-five, or at any time after, in whose hands soever the same might be ; and that the said sheriff should have those moneys before our said justice of the said Supreme Court in the term of September next after, to render to your orator for his damages aforesaid to satisfy said judgment, and that the said sheriff should also have then and there that writ. And your orator further shows unto your honor, that he has been informed, and believes it to be true, that the said writ of *fieri facias*, before it was delivered to the said sheriff, was duly recorded according to the form of the statute in such case made and provided, directing the said sheriff to levy the said sum of one thousand two hundred and fifty-nine dollars and ninety-nine cents, with in-

terest from the date of the said judgment, besides his fees and charges : and that the said writ, so endorsed, was before the return day thereof, to wit, on the fifteenth day of May, eighteen hundred and thirty-five, delivered to Asa Jones, esquire, sheriff of the said county of Hunterdon, to be executed according to law.

And your orator further shows unto your honor, that he has been informed, and believes that the said writ of *fieri facias* was, in due form of law, returned by the said sheriff into the clerk's office of the said Supreme Court at Trenton, in the term of September, eighteen hundred and thirty-five, with his return thereto, as follows : *Nulla bona.* A. Jones, sheriff.—Fees 12 cts.—as by the said writ, remaining unsatisfied in the said clerk's office at Trenton, by the said sheriff's return thereon endorsed, reference being had thereto, will more fully and at large appear, and to which, or a copy thereof, now in the possession of your orator, and ready to be produced when and where this honorable court shall direct, your orator prays leave to refer.

And your orator further shows unto your honor, that the said judgment has never been paid or satisfied to your orator, or to any person or persons for his use or benefit, nor has he ever derived any benefit from the same ; that the said judgment remains due and owing to your orator, and in full force and effect against the said Asa C. Dunham, in no wise vacated, annulled, reversed, or satisfied.

And your orator further shows unto your honor, that there is now justly, and equitably and actually, due to your orator upon his said judgment the sum of twelve hundred and nineteen dollars and twenty-one cents, besides the taxed costs, together with the legal interest thereon from the date of the said judgment, over and above all just claims of the said Asa C. Dunham, by way of set-off or otherwise.

And your orator further shows unto your honor, that afterwards, to wit, on or about the tenth day of January,

eighteen hundred and fifty, he caused to be issued out of said Supreme Court, upon his said judgment, a second writ, commonly called an *alias fieri facias de bonis et terris,* directed to the sheriff of the said county of Hunterdon, tested of the term of January, eighteen hundred and fifty, and returnable to the term of April next after, commanding the said sheriff, that of the goods and chattels of the said Asa C. Dunham, in his county, he should cause to be made the sum of one thousand two hundred fifty-nine dollars and ninety-nine cents, the damages aforesaid, to satisfy the said judgment so recovered by your orator against the said Asa C. Dunham; and if sufficient goods and chattels of the said Asa C. Dunham could not be found in the said county, whereof the damages aforesaid might be made, then the said sheriff was further commanded, that he should cause the whole, or the residue of the said damages, to be made of the lands, tenements, hereditaments, and real estate whereof the said Asa C. Dunham was seized on the twelfth day of May, eighteen hundred and thirty-five, or at any time after, in whose hands soever the same might be; and that the said sheriff should have that money before our justices of our said Supreme Court at Trenton, on the first Tuesday of April, eighteen hundred and fifty, to render to your orator for the damages aforesaid, and that he should also have then and there that writ. And your orator further shows, that the said last mentioned writ, before the delivery thereof to the said sheriff, was duly recorded according to the form of the statute in such case made and provided, and that, after the same was so recorded, it was delivered to Garret Servis, esquire, sheriff of the said county of Hunterdon, to be executed.

And your orator further shows to your honor, that the said Garret Servis, esquire, sheriff as aforesaid, by virtue of the said writ, made the following levy, to wit:

"By virtue of the above stated writ, I have levied on the following property of Asa C. Dunham, *viz.* 3 stacks of

wheat, 2 stacks of oats, about 14 acres of green grain in the ground, 12 head of cattle (steers), and 190 sheep, subject to all prior legal encumbrances—value one dollar.— January 18th, 1850.

I have also levied, by virtue of the above stated writ on the right and title of the said Asa C. Durham to the following real estate, *viz.* a tract and parcel of land, situate in the townships of Bethlehem and Franklin, in the county of Hunterdon, adjoining lands now or late of James W. Hope, Robert Foster, and others, containing sixty-nine and a half acres of land, more or less (excepting thereout four several lots heretofore sold and conveyed to Michael Hagerty, Alexander Probasco, Joseph V. D. Stout, and James W. Hope).

Also, a certain tract or parcel of land, situate in the townships of Bethlehem and Franklin, in said county, adjoining lands of Joseph Boss, Daniel Carhart, and others, containing ninety-four acres of land, more or less.

Also, a lot of land, situate in the township of Bethlehem, in said county, adjoining lands of Peter Case and others, containing sixty-five hundredths of an acre of land, more or less.

Also, a certain lot or parcel of land, situate in the township of Lebanon, in said county, adjoining lands now or late of Abraham Banghart and others, containing eleven acres of land, more or less.

Also, a certain lot of land situate in the township of Bethlehem, in said county, adjoining lands now or late of Martha Wilson and others, containing five acres of land, more or less.

Also, a lot of land, in said township of Bethlehem, in said county, adjoining lands now or late of Martha Wilson and others, containing twenty-four acres of land, more or less.

Also, three lots of land, situate in said township of Bethlehem, in said county, being a part of the bog meadow tract, and called lots No. 7, 8, and 9 ; said lot, No. 7,

containing ten acres of land, more or less; No. 8, con-taining ten acres of land, more or less; No. 9, five acres, more or less. Also, a lot of land, situate in Clinton, town-ship of Bethlehem, in said county, containing one and a half acres of land, more or less, being the same conveyed by Robert Foster, jun., to John W. Bray and John L. Taylor, their heirs and assigns, by deed bearing date the 5th day of April, 1828.

Also, another lot in the village of Clinton, township of Bethlehem, in said county, adjoining the last mentioned lot, containing eight-tenths of an acre of land, more or less, excepting out of the last mentioned two lots of land certain parts heretofore conveyed to John Green and Israel Smith.

Also, a certain tract or parcel of land, situate in the township of Clinton, in said county, adjoining lands now or late of David Sharp, Joseph Fritts, and others, con-taining seventy-seven acres of land, more or less; all subject to all prior legal encumbrances—value one dollar.— March 4th, 1850."

Reference being had to the said writ, levy, and return will more fully appear, and to which your orator prays leave to refer, if it shall be necessary for him so to do.

And your orator further shows, that shortly before, and at the time your orator obtained his said judgment, to wit, in the month of May, eighteen hundred and thirty-five, the said Asa C. Dunham owned and possessed, in his own right, sundry goods and chattels, and was the owner in fee simple of the lands and tenements, with the appur-tenances hereinafter described, lying and being in the said county of Hunterdon.

And your orator further shows unto your honor, that the said Asa C. Dunham, being so seized and possessed of real and personal property to the value of six thousand dollars and upwards, to wit, on or about the sixteenth day of September, eighteen hundred and thirty-four, in order to defeat your orator in his said claim, which he

Dunham v. Cox.

then and still has against him, the said Asa C. Dunham, and in order to protect the said property against the said claim, and to secure it for his own use, combining and confederating with one Azariah W. Dunham and Nehemiah Dunham, his brothers, with divers other persons at present unknown to your orator, but whose names, when discovered, your orator prays may be inserted herein, with apt and proper words to charge them in the premises, contriving to injure and oppress your orator in the premises, and under various pretences sold and delivered to the said Azariah W. Dunham and Nehemiah Dunham, and to divers other persons at present unknown to your orator, and who now claim the same as their own, large quantities of personal estate of great value, to wit, of the value of one thousand dollars or thereabouts, which property ought in justice to be yielded up by the said Azariah and the said Nehemiah to satisfy the said claim of your orator. And your orator has been informed and believes, and so charges, that the said sale of the aforesaid personal property was without any just consideration, and intended to be made for the sole purpose of depriving your orator and others, creditors of the said Asa C. Dunham, of his and their just and honest claims.

And your orator further shows unto your honor, that, as he has been informed and verily believes, the said Asa C. Dunham, on or about the said day and year last aforesaid, combining and confederating with the said Azariah W. Dunham and Nehemiah Dunham, and with divers persons at present unknown to your orator, but whose names, when discovered, your orator prays may be inserted herein with proper and apt words to charge them in the premises, contriving to oppress and injure your orator in the premises, fraudulently, by his certain deeds of indenture of bargain and sale under his hand and seal executed by and between himself, of the first part, and the said Azariah W. Dunham, of the second part, purporting to bear date on the sixteenth day of Septem-

ber, eighteen hundred and thirty-four, the first purporting to be for the consideration of two thousand three hundred dollars, and is in the words and figures and in substance following, to wit :

" This indenture, made this sixteenth day of September, in the year of our Lord one thousand eight hundred and thirty-four, between Asa C. Dunham, of the township of Kingwood, in the county of Hunterdon, and state of New Jersey, party of the first part, and Azariah W. Dunham, of the township of Bethlehem, in the county of Hunterdon, and state of New Jersey aforesaid, party of the second part ; witnesseth, that the said Asa C. Dunham, for and in consideration of the sum of two thousand three hundred dollars, good and lawful money of the United States of America, to him, the said Asa C. Dunham, in hand paid, or secured to be paid, at and before the sealing and delivery of these presents, the receipt whereof he, the said Asa C. Dunham, doth hereby acknowledged and discharge him, the said Azariah W. Dunham, his heirs and assigns for ever, hath given, granted, bargained, sold, aliened, enfeoffed, released, conveyed, and confirmed, and by these presents doth, grant, bargain, sell, alien, enfeoff, release, convey, and confirm unto him, the said Azariah W. Dunham, his heirs and assigns for ever, all those several lots, tracts, or parcels of land situate, lying, and being in the township of Lebanon, Kingwood, and Bethleham, in the county of Hunterdon, and state of New Jersey aforesaid, the first of which being the equal undivided half part of all those two lots or parcels of land situate in the townships of Bethlehem and Kingwood, in said county ; the first of which, with the buildings, is situate in the townships of Bethlehem and. Kingwood aforesaid, and is bounded and described as follows : Beginning at a corner of land now belonging to James W. Hope, at the abutment of an old bridge on the west bank of the South branch of Raritan river, from thence running, &c.

The second of said lots or parcels of land is bounded and described as follows : beginning at a stake on the north side of the New Jersey turnpike-road, and in Clement Bonnell's line ; from thence running, &c,

Also, all the undivided half part of all that certain lot or parcel of land situate, lying, and being in the township of Bethlehem, in the county and state aforesaid, and is bounded and described as follows : beginning at a flat limestone rock on the northerly side of the New Jersey turnpike road, corner to a lot belonging to John Green ; from thence running, &c.

Also, all the undivided half part of all that certain lot or parcel of land situate, lying, and being in the township of Lebanon, in the county and State aforesaid, and is bounded and described as follows, beginning, &c.

And, also, all the estate, right, title, interest, property, claim, and demand whatsoever, either in law or in equity, of him, the said Asa C. Dunham, of, in, and to the said several lots, tracts, or parcels of land, and every part and parcel thereof : to have and to hold all and singular the said several lots, tracts, or parcels of land, with the hereditaments and premises hereby granted, with the appurtenances, unto him, the said Azariah W. Dunham, his heirs and assigns, to the sole and only proper use, benefit, and behoof of him, the said Azariah W. Dunham, his heirs and assigns for ever.   And the said Asa C. Dunham, for himself, his heirs, executors and administrators, doth hereby covenant, grant, promise and agree, to and with the said Azariah W. Dunham, his heirs, executors administrators and assigns, that at the time of the sealing and delivery of these presents, he, the said Asa C. Dunham, is seized in his own right of an absolute and indefeasible estate of inheritance in fee simple in the said several premises hereby granted, with the appurtenances, and hath good right, full power, and sufficient authority in the law to grant, bargain, sell, and convey the same to the said Azariah W. Dunham, his heirs and assigns, in

manner aforesaid ; and that it shall and may be lawful for the said Azariah W. Dunham, his heirs and assigns, at all times for ever hereafter, peaceably and quietly to have, hold, use, occupy, possess and enjoy the said premises, with the appurtenances, and every part and parcel thereof, without the lawful let, suit, action, interruption, or disturbance of the said party of the first part, their heirs and assigns, or any other person or persons whomsoever lawfully claiming or to claim the same ; and that the said premises are free and clear, and freely and clearly acquitted and discharged of and from all former mortgages, judgments, executions, and of and from all other encumbrances whatever. And lastly, that he, the said party of the first part, and his heirs all and singular, to said lot or parcel of land, with the heriditaments and premises hereby granted, with the appurtenances, unto the said party of the second part, his heirs, and against him, the said party of the first part, and against all and every other person or persons whomsoever lawfully claiming or to claim the same, shall and will warrant and for ever defend."

And which said deed was duly recorded in the clerk's office in the said county of Hunterdon, vol. 58, fol. 457, on the 24th day of September, in the year of our Lord one thousand eight hundred and thirty-four.

The second conveyance, purporting to be for the consideration of five hundred dollars, is in the words and in substance following, to wit :

" This indenture, made this sixteenth day of September, in the year of our Lord one thousand eight hundred and thirty-four, between Asa C. Dunham, of the township of Kingwood, in the county of Hunterdon, and state of New Jersey, party of the first part, and Nehemiah Dunham, of the county and state aforesaid, party of the second part, witnesseth, that the party of the first part, for and in consideration of the sum of five hundred dollars, good and lawful money of the United States, to him in hand well and truly paid by the said party of the second part before

the sealing and delivery of these presents, the receipt whereof he doth hereby acknowledge, hath granted, bargained, sold, aliened, enfeoffed, released and confirmed, and by these presents doth grant, bargain, sell, alien, enfeoff, release, and confirm unto the said party of the second part, his heirs and assigns, all those five several lots, tracts, or parcels of land, situate in the county of Hunterdon aforesaid, herein after mentioned, that is to say : all those three lots of woodland situate in the township of Bethlehem, in the county of Hunterdon aforesaid, being part of the bog meadow tract, and called lots No. 7, 8, and 9, the said lot, No. 7, containing 9 acres and eighty-six hundredths of an acre, lot No. 8, containing nine acres and sixty hundredths of an acre, and lot No. 9, containing five acres and twenty-six hundredths of an acre. Also, all those two certain lots of land situate in Clinton, in the township of Bethlehem aforesaid, the first whereof, containing one acre and a half of land, more or less, conveyed by Robert Foster, jun., to John W. Bray and John B. Taylor, their heirs and assigns, by deed bearing date the fifth day of April, eighteen hundred and twenty-eight. The second of said lots, adjoining the first, and containing eight-tenths of an acre of land, Samuel Crook and Elizabeth his wife, by indenture bearing date the twenty-ninth day of March, eighteen hundred and twenty-eight, granted and conveyed to the said John W. Bray and John B. Taylor, their heirs and assigns, in fee simple, which said five several lots, tracts, or parcels of land, the said John W. Bray and Mary his wife, and John B. Taylor and Susan A. his wife, by indenture bearing date the thirtieth day of June, in the year of our Lord eighteen hundred and thirty-four, granted and conveyed to the said Asa C. Dunham, his heirs and assigns, (as by reference to the last mentioned conveyance will more fully appear) excepting and reserving, however, out of the last mentioned two lots of land certain parts or parcels of the said lots, respectively, which have been heretofore con-

2 P*

veyed to John Green and Israel Smith, and by the said Smith to James W. Hope, and now occupied by the said John Green and James W. Hope, the residue of the said two last mentioned lots, which is hereby intended to be conveyed to the said Nehemiah Dunham, containing, by estimation, one acre and seven-tenths of an acre of land, be the same more or less : together with all and singular the buildings, improvements, ways, woods, waters, watercourses, rights, liberties, privileges, hereditaments, and appurtenances to the same belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and of every part and parcel thereof ; and also all the estate, right, title, interest, use, possession, property, claim, and demand whatsoever, both in law and equity, of him, the said party of the first part, of, in, and to the said premises, with the appurtenances : to have and to hold the said lots or parcels of land, with the hereditaments and premises hereby granted, and every part and parcel thereof, with the appurtenances, unto the said party of the second part, his heirs and assigns, to the only proper use, benefit, and behoof of him, the said party of the second part, his heirs and assigns, for ever. And the said Asa C. Dunham, party aforesaid of the first part, for himself, his heirs, executers, and administrators, doth hereby covenant, promise, and grant, to and with Nehemiah Dunham, party of the second part, his heirs and assigns, that at the time of the sealing and delivery hereof, he, the said party of the first part, is seized in his own right of an absolute and indefeasible estate of inheritance, in fee simple of and in all and singular the premises hereby granted, with the appurtenances, and hath good right, full power, and sufficient authority in the law to grant, bargain, sell, and convey the same unto the said party of the second part, his heirs and assigns, for ever, according to the true intent and meaning of these presents. And also, that it shall and may be lawful for the said party of the second part,

his heirs and assigns, at all times for ever hereafter, peaceably and quietly to have, hold, use, occupy, possess, and enjoy the said premises, with the appurtenances, and every part and parcel thereof, without the lawful let, suit action, interruption, or disturbance of the said party of the first part, their heirs or assigns, or any other person or persons whomsoever lawfully claiming or to claim the same. And that the said premises are free and clear, and freely and clearly acquitted and discharged of and from all former mortgages, judgments, executions, and of and from all other encumbrances whatever. And lastly, that he, the said party of the first part, and his heirs all and singular, the said lots or parcels of land, with the hereditaments and premises hereby granted, with the appurtenances, unto the said party of the second part, his heirs, and against him the said party of the first part, and against all and every other person or persons whomsoever lawfully claiming or to claim the same, shall and will warrant and for ever defend."

And which said deed was duly recorded in the clerk's office in the said county of Hunterdon, in vol. 58, fol. 463, on the twenty-fourth day of September, one thousand eight hundred and thirty-four.

The third conveyance, purporting to be for the consideration of two thousand six hundred and thirty-four dollars and forty-four cents, and is in the substance following, to wit:

" This indenture, made this thirtieth day of June, in the year of our Lord one thousand eight hundred and thirty-four, between John W. Bray and Mary his wife and John B. Taylor and Susan Adeline his wife, all of Clinton, in the township of Lebanon, county of Hunterdon, and state of New Jersey, party of the first part, and Asa C. Dunham, of the township of Bethlehem, in the county and state aforesaid, party of the second part, witnesseth, that the party of the first part, for and in consideration of the sum of two thousand six hundred and thirty-four dol-

lars and forty-four cents, lawful money of the United States, to them in hand well and truly paid by the said party of the second part, before the sealing and delivery of these presents, the receipt whereof they do hereby acknowledge, have granted, bargained, sold, aliened, enfeoffed, released, and confirmed, and by these presents do grant, bargain, sell, alien, enfeoff, release, and confirm, unto the said party of the first part, his heirs and assigns, all those six several lots or parcels of land, situate in the county of Hunterdon aforesaid, herein after mentioned, that is to say : all that tract of land, situate in the township of Lebanon aforesaid, adjoining and bounded by lands of David (late Moses) Sharp, the heirs of John J. Lowe, deceased, the heirs of Jacob Runkle, deceased, John Emery, Joseph Fritts (late John W. Bray), and others, containing seventy-seven acres, more or less, being the same land which John J. Lowe and wife, by deed, bearing date the fifteenth day of April, A. D. eighteen hundred and twenty-six, and recorded in the record of deeds for the county of Hunterdon, in vol. 41, pages 149, &c., conveyed to the said John W. Bray, his heirs and assigns, in fee simple. Also, all those three lots of woodland, situate in the township of Bethlehem, and county of Hunterdon aforesaid, being part of the bog meadow tract, and called lots Nos. 7, 8, and 9, the said lot, No. 7, containing nine acres and eighty-six hundredths of an acre, lot No. 8 containing nine acres and sixty hundredths of an acre, and lot No. 9 containing five acres and twenty-six hundredths of an acre, being the same three lots of land which William Hum, by indenture bearing date the third day of April, A. D., eighteen hundred and twenty eight, and recorded in the record of deeds for Hunterdon county, vol. 45, pages 42, &c., conveyed to the said John W. Bray and John B. Taylor, their heirs and assigns, in fee simple. Also, all those two certain lots of land, situate at Clinton, in the township of Bethlehem aforesaid, the first whereof, containing one acre and a half of land,

more or less, Robert Foster. jun., by indenture bearing date the fifth day of April, A. D. eighteen hundred and twenty-eight, and recorded in the record of deeds for the county of Hunterdon, in vol. 49, fol. 254, &c., conveyed to the said John W. Bray and John B. Taylor, their heirs and assigns in fee simple, the second of which said lots, adjoining the first, and containing eight-tenths of an acre, Samuel Crooks and Elizabeth his wife, by indenture bearing date the twenty-ninth day of March, A. D. eighteen hundred and twenty-eight, and recorded in the record of deeds for the county of Hunterdon, in vol. 45, fol. 44, &c., conveyed to the said John W. Bray and John B. Taylor, their heirs and assigns, in fee simple (as by reference to the said several conveyances will appear), excepting and reserving, however, out of the said two last mentioned lots, of land certain parts or parcels of the said lots, respectively, which have been heretofore conveyed to John Green and to Israel Smith, and by the said Smith to James W. Hope, and are now occupied by John Green and James W. Hope ; the residue of the said two last mentioned lots, which is hereby intended to be conveyed to the said Asa C. Dunham, containing, by estimation, one acre and seven-tenths of an acre, be the same more or less : together with all and singular the buildings, improvements, ways, woods, waters, watercourses, rights, liberties, privileges, hereditaments, and appurtenances to the same belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and of every part and parcel thereof ; and also all the estate, right, title, interest, use, possession, property claim, and demand whatsoever, both in law and in equity, of him, the said party of the first part, of, in, and to the said premises, with the appurtenances : to have and to hold the said lots or parcels of land, with the heriditaments and premises hereby granted, and every part and parcel thereof, with the appurtenances, unto the said party of the second part, his heirs and assigns, to the

only proper use, benefit, and behoof of him, the said party of the second part, his heirs and assigns for ever. And the said John W. Bray and John B. Taylor, parties of the first part, for themselves, their heirs, executors and administrators, do hereby covenant, promise, and grant, to and with the said Asa C. Dunham, party of the second part, his heirs and assigns, that at the time of the sealing and delivery hereof they, the said parties of the first part, are seized in their own right of an absolute and indefeasible estate of inheritance of fee simple of and in all and singular the premises hereby granted, with the appurtenances, and have good right, full power, and sufficient authority in the law to grant, bargain, sell, and convey the same unto the said party of the second part, his heirs and assigns, for ever, to the true intent and meaning of these presents. And also, that it shall and may be lawful for the said party of the second part, his heirs and assigns, at all times for ever hereafter, peaceably and quietly to have, hold, use, occupy, possess, and enjoy the said premises, with the appurtenances, and every part and parcel thereof, without the lawful let, suit, eviction, interruption, or disturbance of the said parties of the first part, their heirs and assigns, and any other person or persons whomsoever lawfully claiming or to claim the same ; and that the said premises are free and clear, and freely and clearly acquitted and discharged of and from all former mortgages, judgments, executions, and of and from all other encumbrances whatever. And lastly, that they, the said parties of the first part, and their heirs all and singular, the lots or parcels of land, with the hereditaments and premises hereby granted, with the appurtenances, unto the said party of the second part, his heirs, and against them, the said parties of the first part, and against all and every other person or persons whomsoever lawfully claiming or to claim the same, will warrant and for ever defend."

Which said deed was duly acknowledged by the said

John W. Bray and wife, and John B. Taylor and wife, before Nathaniel Saxton, esquire, one of the masters of the Court of Chancery of New Jersey, on the thirtieth day of June, eighteen hundred and thirty-four, and duly recorded in the clerk's office of the said county of Hunterdon, in vol. 58 of deeds, fol. 675, on the twenty-fourth day of September, eighteen hundred and thirty-four.

The fourth conveyance, purporting to be for the consideration of eight hundred dollars, is in substance as follows:

"This indenture, made this seventeenth day of October, in the year of our Lord one thousand eight hundred and thirty-four, between Asa C. Dunham, of the township of Kingwood, in the county of Hunterdon, and state of New Jersey, party of the first part, and Azariah W. Dunham, of the township of Bethlehem, in the county of Hunterdon, and state of New Jersey aforesaid, party of the second part: witnesseth, that the party of the first part, for and in consideration of the sum of eight hundred dollars, good and lawful money of the United States, to him in hand, well and truly paid by the said party of the second part, before the sealing and delivery of these presents, the receipt whereof they do hereby acknowledge, hath granted, bargained, sold, aliened, enfeoffed, released, and confirmed, and by these presents doth grant, bargain, sell, alien, enfeoff, release, and confirm unto the said party of the second part, his heirs and assigns, all that certain lot or parcel of land situate, lying, and being in the township of Lebanon, in the county of Hunterdon, and state of New Jersey aforesaid, and is bounded and described as follows, that is to say, by land of David (late Moses) Sharp, the heirs of John J. Lowe, deceased; the heirs of Jacob Runkle, deceased; John Emery, Joseph Fritts (late John W. Bray), and others, containing seventy-seven acres of land, be the same more or less, being the same lot or parcel of land which John J. Lowe and wife granted and conveyed to John W. Bray and Mary his wife, and John

B. Taylor and Susan Adeline, his wife, granted and conveyed to the said Asa C. Dunham, by deed bearing date the thirtieth day of June, in the year of our Lord one thousand eight hundred and thirty-four, and recorded in record of deeds for the county of Hunterdon, in vol. 58 of deeds, pages 465, 6, 7 and 8, reference being thereunto had will more fully appear; together with all and singular the buildings, improvements, ways, waters, watercourses, rights, liberties, privileges, hereditaments, and appurtenances to the same belonging or in any wise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereof, and of every part and parcel thereof. And also, all the estate, right, title, interest, use, possession, property, claim, and demand whatsoever, both in law and in equity, of him, the said party of the first part, of, in, and to the said premises, with the appurtenances: to have and to hold the said lot or parcel of land, with the hereditaments and premises hereby granted, and every part and parcel thereof, with the appurtenances, unto the said party of the second part, his heirs and assigns, to the only proper use, benefit, and behoof of him, the said party of the second part, his heirs and assigns, for ever. And the said Asa C. Dunham, party aforesaid of the first part, for himself, his heirs, executors, and administrators, doth hereby covenant, promise, and grant, to and with the said Nehemiah Dunham, party of the second part, his heirs and assigns, that at the time of the sealing and delivery hereof, he, the said party of the first part, is seized in his own right of an absolute and indefeasible estate of inheritance in fee simple, of and in all and singular the premises hereby granted, with the appurtenances, and hath good right, full power, and sufficient authority in the law to grant, bargain, sell, and convey the same unto the said party of the second part, his heirs and assigns for ever, according to the true intent and meaning of these presents. And also, that it shall and may be lawful for the said party of the second part,

his heirs and assigns, at all times for ever hereafter, peaceably and quietly to have, hold, use, occupy, possess, and enjoy the said premises, with the appurtenances, and every part and parcel thereof, without the lawful let, suit, eviction, interruption, or disturbance of the said party of the first part, their heirs and assigns, or any person or persons whomsoever lawfully claiming or to claim the same. And that the said premises are free and clear, and freely and clearly acquitted and discharged of and from all former mortgages, judgments, executions, and of and from all other encumbrances whatsoever. And lastly, that he, the said party of the first part, and his heirs all and singular, the said lot or parcel of land, with the hereditaments and premises hereby granted, with the appurtenances, unto the said party of the second part, his heirs and assigns, and against him, the said party of the first part, and against all and every other person and persons whomsoever lawfully claiming or to claim the same, shall and will warrant and for ever defend."

And which said deed was afterwards, to wit on the 18th of October, 1834, recorded in the record of deeds in the clerk's office in the said county of Hunterdon, reference being had to said four several deeds of conveyance remaining of record in said county of Hunterdon, and to which, or to certified copies thereof, your orator begs leave to refer, if it should be necessary for him so to do.

And your orator further shows unto your honor, that he has been informed, and believes it to be true, and so charges, that in the year one thousand eight hundred and thirty-four, or about that time, the said Asa C. Dunham was security for one John W. Bray and John B. Taylor for about the sum of two thousand five hundred dollars, including a part of the above mentioned claim of your orator, and that, in order to indemnify and save harmless the said Asa C. Dunham, and enable him to pay and satisfy the said security debts, as well to your orator as others, the said John W. Bray and John B. Taylor and

wives afterwards, to wit, on the thirtieth day of June, eighteen hundred and thirty-four, made, executed, and delivered to the said Asa C. Dunham their certain deed of indenture, in the words, figures, and in substance herein before mentioned and set forth.

And your orator further shows unto your honor, that he has been credibly informed, and believes that the said Asa C. Dunham never paid any of the said security debts of the said John W. Bray and John B. Taylor out of the proceeds arising from the sale of the said lands so conveyed by them to the said Asa C. Dunham, but, on the contrary, afterwards, to wit, on the sixteenth day of September, in the year of our Lord one thousand eight hundred and thirty-four, fraudulently and without any consideration having been actually paid, sold and conveyed a part of the same to the said Nehemiah Dunham, and the residue thereof to the said Azariah W. Dunham, who holds the same for the use, benefit, and advantage of the said Asa C. Dunham, and in order to defraud your orator and others, the creditors of the said Asa C. Dunham, and to prevent and hinder him and them from recovering their just and honest claims against the said Asa C. Dunham.

And your orator further shows unto your honor, that he has been informed, and verily believes, and so charges, that notwithstanding the said sale of the said personal property, and the said deeds of conveyance for the said real property, by the said Asa to the said Azariah and Nehemiah, herein before mentioned and described, yet that the said Asa has ever since remained in and had the actual use, control, and possession of the whole of the said property, real and personal, receiving and enjoying the rents, income, proceeds, and profits thereof.

And your orator further shows unto your honor, that he has frequently and in a friendly manner applied to the said Asa C. Dunham, Azariah W. Dunham, and Nehemiah Dunham for the payment of his said judgment, and that they should deliver into the hands of the said sheriff

of the county of Hunterdon the said real and personal property so fraudulently assigned and passed over by the said Asa C. Dunham to the said Azariah W. Dunham and Nehemiah Dunham, by them now held and claimed, and that the said Azariah W. Dunham and Nehemiah Dunham should permit the said sale, transfer, and conveyance to be declared null and void, and the said real and personal property to be sold to satisfy the said claim and judgment of your orator, as in equity and good conscience they ought to have done, and as your orator well hoped they would have done.

But now so it is, may it please your honor, the said Asa C. Dunham, Azariah W. Dunham, and Nehemiah Dunham (brothers), combining and confederating with other persons at present unknown to your orator, but whose names, when discovered, your orator prays may be inserted herein, with proper and apt words to charge them as parties defendants hereto, contriving how to oppress, injure, and aggrieve your orator in the premises, wholly neglect and refuse to pay the said judgment, or to deliver into the possession of the said sheriff the said real and personal property, or to allow the said conveyances to be set aside as null and void, and have and do absolutely and unlawfully oppose the execution of the said writ of *fieri facias* in the hands of the said Garret Servis, sheriff as aforesaid, and threatened to prosecute him should he make sale of the same. And sometimes they give out and pretend that the said judgment was never obtained as aforesaid; and sometimes they give out and pretend that the said judgment and claim of your orator has been paid off and satisfied; and sometimes they give out and pretend that the said real and personal property was not transferred by the said Asa to the said Azariah and Nehemiah as aforesaid, and that the same has not been in the use, occupation, and possession of the said Asa since the time of the said sale. And sometimes they pretend that they have not hindered or prevented

the said sheriff in the proper execution of the said writ of *fieri facias*, the contrary of all which your orator charges to be true.

All which actings and doings of the said Asa C. Dunham, Azariah W. Dunham, and Nehemiah Dunham, are contrary to equity and good conscience, and tend to the manifest injury and oppression of your orator.

In tender consideration whereof, and for inasmuch as your orator is remediless in the premises at the common law, and cannot have adequate relief except by the aid and interposition of this honorable court, where matters of this kind and of like nature are properly and only cognizable and relievable—

To the end, therefore, that the said Asa C. Dunham, Azariah W. Dunham, and Nehemiah Dunham, and their confederates, when discovered, may, upon their several and respective corporal oaths, full, true, and perfect answers make to all and singular the matters and things before stated and charged, as fully and particularly, sentence by sentence, and paragraph by paragraph, as if they were particularly interrogated, with all the attending circumstances and incidental transactions, and not only to the best of their knowledge and remembrance, respectively, but also according to the best of their understanding, information, hearsay, and belief, severally and respectively; and more especially that they may answer, set forth, and particularly describe all the personal property belonging to the said Asa C. Dunham at any time between the first day of January, eighteen hundred and thirty-four, and the present time, to wit, the third day of April, eighteen hundred and fifty, and the true value thereof; and if sold and disposed of, to whom the same was so sold and disposed of, and when, for what consideration, and whether the consideration money has been paid or still remains due and owing to the said Asa C. Dunham, and if paid to the said Asa C. Dunham, whether the same was by him applied to the payment and satisfaction of his debts, or for

what purpose it was used, and how disposed of ; and whether, in the year one thousand eight hundred and thirty-four, or some other time, and when, a part of said personal property, and what part, was not, in some way or manner, placed in the hands of the said Azariah W. Dunham and Nehemiah Dunham, or one of them, in trust or in some other way, for the use and benefit of the said Asa, and whether he has not since that time enjoyed and received the use, benefit, and advantage of the same. And that they may answer, set forth, and discover the real estate belonging to the said Asa C. Dunham, and by him conveyed to the said Azariah W. Dunham and Nehemiah Dunham, as hereinbefore mentioned, and what disposition has been made of the same, and every part thereof, and when such disposition was made, fully and particularly, and in whose possession the said real estate has been since the first day of September, eighteen hundred and thirty-four, and the amount and value of the same ; and whether the said Asa C. Dunham did make any conveyance or conveyances of the said real estate to the said Azariah W. Dunham and Nehemiah Dunham, or either of them, and what was the true and actual consideration paid, to whom, when, and in what manner ; and whether any part still remains unpaid, how much, to whom, and how, whether by bill, bond, note, or otherwise, and when the same is or will be due and payable. And that the said Asa, Azariah W., and Nehemiah may set out and annex to their answer a copy of every deed, writing, lease, contract, bargain or agreement incident to the sale, use, occupation, and possession of the said real estate between them, and who has enjoyed, used, and occupied and received the rents and profits of the said real estate since the sixteenth day of September, eighteen hundred and thirty-four, and may also set forth for what purpose and object, at whose instance and advice, the said sales of the real estate were made ; that the said Asa may set out the several offers he had for the said real

estate, when and from whom ; and may set out and dis-
cover the reasons, fully and particularly, why he sold and
conveyed the said real and personal estate to the said Aza-
riah W. Dunham and Nehemiah Dunham, and to each of
them, his brothers ; when the said bargains were first
begun, and when finally concluded between them, the
said Asa and Azariah and Nehemiah, and who was pre-
sent at such bargain and sale ; and whether the said Asa
has not, since the year one thousand eight hundred and
thirty-four, rented out said real estate, or the greater part
thereof, and what part, to whom, and on what terms ; and
whether he has not had an equal or some other portion,
and what portion, of the said rents and profits. And that
the said Azariah W. Dunham and Nehemiah Dunham
may set forth and answer whether they have reconveyed
the said real estate or any part thereof, to the said Asa
C. Dunham, or to any other person for him or for his use
and benefit, and when the same was done, for what con-
sideration, when and how paid or secured, or whether
they, the said Azariah W. Dunham and Nehemiah Dun-
ham, still hold and claim the same as their own in fee
simple ; and whether the said real estate has been encum-
bered by judgment, mortgage or otherwise, and, if so,
when, to whom, and for what amount the same has been
encumbered, and whether the said John W. Bray and
wife and John B. Taylor and wife did not make the con-
veyance (above set forth and described) to the said Asa
C. Dunham at the time or some other time, and when,
and for the purpose of enabling him to pay your orator
and others, as herein before mentioned, or for some other
purpose and what ; and whether the said Asa C. Dunham
has, in pursuance thereof, paid any of the said creditors,
and, if so, state their names, amounts paid, and when
paid ; or whether the said Nehemiah and Azariah W. still
hold the said lands and premises so conveyed by the said
John W. Bray and John B. Taylor in trust for the said
Asa, or for your orator, or for whom they still hold the

same. And that the said Asa C. Dunham, Azariah W. Dunham, and Nehemiah Dunham may set out in full every agreement, bargain, instrument, sale, or other transaction relating to the said real and personal estate, whether between the said Asa C. Dunham, Azariah W. Dunham, and Nehemiah Dunham, or between either or all three of them, or some other person or persons at present unknown to your orator, clearly, explicitly, and directly, as if the same was herein set forth, and they interrogated thereunto; and that the said defendants, Asa C. Dunham, Azariah W. Dunham, and Nehemiah Dunham, or some of them, may be decreed to pay to your orator the amount of his said judgment, interest, and costs, and that the said fraudulent conveyances and sales be set aside and declared void, and the said real and personal property be sold, and the proceeds, or so much thereof as may be necessary, be appropriated to the payment of your orator's said claim. That the said defendants account for the rents, issues, and profits of the said real estate and for the proceeds of the sales of said personal estate by them, or any of them, heretofore made, or that may hereafter be made; and that your orator may have such further and other relief as the nature of his case may require and as to your honor shall seem meet.

May it please your honor, the premises considered, to grant to your orator the state's writ of subpœna, issuing out of and under the seal of this honorable court, to be directed to the said Asa C. Dunham, Azariah W. Dunham, and Nehemiah Dunham, therein and thereby commanding them, and each of them, on a certain day and under a certain penalty, therein to be specified, to be and appear before your honor, in this honorable court, then and there to answer all and singular the premises contained in this your orator's bill of complaint, and to stand to and abide such order and decree in the premises as shall seem meet and agreeable to equity and good conscience. And your orator will ever pray, &c.

To this bill a general demurrer was put in by all the defendants.

After argument, the demurrer was overruled by the Chancellor, by order made on the 3d of February, 1852, and the defendants were required to answer the bill in forty days from date of said order.

The following petition of appeal was filed February 26th, 1852, by the appellants, and copy duly served upon the appellee :

" The humble petition of Asa C. Dunham, Nehemiah Dunham, and Azariah W. Dunham, the appellants in the above stated cause, respectfully shows, that your petitioners find themselves aggrieved by an order made in the Court of Chancery, by his Honor Oliver S. Halsted, late Chancellor of the state of New Jersey, bearing date the third day of February, in the year of our Lord one thousand eight hundred and fifty-two, wherein your petitioners were defendants, and the said James B. Cox was complainant, in this respect, to wit, that the said order overrules the demurrer which had been filed by your petitioners in the said cause in the said Court of Chancery to the bill of complaint of the said complainant, and requires your petitioners to file their answer to the said bill of complaint in forty days from the date of said order.

And your petitioners humbly appeal from the said order of the Chancellor, made as aforesaid, upon the ground that the same is erroneous, for that the said demurrer was well taken, and should have been sustained, and that your petitioners are not bound to answer the said bill of complaint of the said complainant.

Your petitioners therefore pray that the said order of the said Chancellor, overruling the said demurrer and requiring your petitioners to answer the said bill of complaint, may be reversed, set aside, and for nothing holden, and that your petitioners may have such relief in the premises as to this honorable court shall seem meet."

The common answer was filed by the respondents.

The Chancellor furnished the court with the following opinion, as containing the reasons for his decree :

HALSTED, C. The bill shows sufficiently that the personal property levied on is claimed by others, under transfers from Asa C. Dunham, and that the lands levied on are claimed by others, under a deed from Asa C. Dunham ; and the transfers and deed are sufficiently charged to be fraudulent. In such cases, it is within the province of this court to remove out of the way of the judgment creditor the hinderance or impediment so interposed, on the ground, that by a sale while such impediment exists, the creditor would not realize the value of the property. And the judgment creditor is not obliged, before coming into this court, to go to a trial at law, of the right of property in the personality levied on, with the view of having the transfer of it declared void, so that it may be sold before the lands. Such transfer is good against the debtor, and the creditor may let it stand as good, if he pleases, and attack the conveyance of the land.

If any of the personal property levied on under the second *fi. fa.*, is not included in the transfer, such part should be sold first. The bill is not, perhaps, as clear as to this as it might have been. An answer may show how this is. Demurrer overruled.

The appeal was argued by

*A. Wurts*, for appellant.

*Thomas A. Hartwell*, for respondent.

The opinion of the Court of Appeals was delivered, at November term, 1855, by

WILLIAMSON, C. This is an appeal from a decree over-ruling a demurrer filed to the bill. The question is whether,

admitting all the facts stated by the bill to be true, the bill can be sustained. It is a bill filed by a judgment and execution creditor, for the purpose of setting aside certain conveyances of real and personal property made by the debtor, as is alleged, to defeat his creditors.

That a judgment and execution creditor may maintain a bill in a court of equity to remove out of the way fraudulent encumbrances placed by a debtor upon his property, in order that the property may be appropriated free from such fraudulent encumbrances to the satisfaction of the creditor's judgment, is so well established, that it is needless to refer to any of the numerous authorities to sustain the position. As there appears some doubt as to the *extent* to which such creditor must proceed at law before he can invoke the aid of a court of equity, it may be well for this court to express an opinion upon this point.

When a creditor has by a judgment established his debt, by the statute he acquires a lien upon all the real estate of his debtor to satisfy his debt. If the debtor has fraudulently conveyed away or encumbered his real estate, so as to interpose an obstacle which embarrasses the debtor in appropriating it by legal process in satisfaction of his debt, then the creditor may file his bill to remove out of the way such fraudulent conveyance or encumbrance. It is not necessary for him to take out execution upon his judgment. The judgment constitutes a lien upon the land, and there is no necessity of compelling the creditor, as a mere matter of form, to incur the further expense at law of issuing an execution. It is, perhaps, most advisable for him to do so. It may avoid a contest with the subsequent execution creditor; for although the judgment is a lien upon the land, an execution upon a subsequent judgment acquires, upon its delivery to the officer by virtue of the statute, a prior lien upon the property. As between the debtor and creditor, however, the issuing of an execution is not necessary in order that the creditor may acquire a right to exhibit his bill for relief.

But if it is the *personal* property of the debtor which the creditor wishes to reach and appropriate to the payment of his judgment, he must take out an execution upon his judgment before he can exhibit his bill; for it is by the *execution*, and not by his *judgment*, that he acquires a lien upon the personal property.

In the case before us, the bill complains of a fraudulent transfer by the debtor, of both his real and personal estate. The complainant has obtained judgment, and issued execution.

The defect of the bill is, that it does not show that the aid of a court of equity is needed to remove any hinderance or impediment interposed by the debtor, in order that the judgment and execution at law may be satisfied.

It is not enough for the bill to show that the debtor has made a fraudulent disposition of any particular portion of his property to entitle the creditor to the aid of a court of equity. He must show that such disposition embarrasses him in obtaining satisfaction of his debt; for if the debtor has other property subject to the judgment and execution sufficient to satisfy the debt, there is no necessity for the creditor to resort to equity. If his debt can be satisfied out of property upon which his judgment is a lien, it is only inviting useless litigation for him to question conveyances made by the debtor, which, however they may have been intended, do not operate as a fraud upon him. A court of equity interposes because its aid is necessary to assist the creditor in obtaining his legal rights. If there is property which the law places within his reach free from embarrassment to satisfy his debt, the aid of a court of equity is not required.

No particular form of the bill or formal specific allegations are necessary to constitute the bill a good one. But facts must be stated from which, at least, the inference may be drawn, that the aid of a court of equity is required to give the judgment its legal and full effect.

But this bill, so far from stating facts to justify such **an**

inference, the contrary legitimately flows from such facts as are stated. The bill, it is true, alleges that the defendant has conveyed away certain real and personal property for the purpose of defrauding the complainant. It does not specify the personal property any further " than as sundry goods and chattels." It describes particularly the *real estate* so alleged to have been disposed of. If the bill had stopped here, even without alleging that the defendants had no other property out of which the judgment might be satisfied, the complainant might be entitled to the aid of the court from the allegation, that this property had been disposed of, by the defendant for the purpose of defrauding his creditor.

But the bill further shows that, by an execution taken out upon the judgment, certain other personal property, in the possession of the defendant, was levied upon by the sheriff. It is true the value of the property is not given; but the very character of this personal estate is such as shows its value to exceed the amount due upon the judgment. The bill does not pretend that this property was ever disposed of by the defendant, or that any legal hinderance or impediment has been placed in the way of the sheriff's appropriating it to the payment of the execution in his hands.

The bill does not stop here. It shows that the sheriff, by his execution, levied upon nine distinct tracts of land as the property of the defendant. It does not show that there is any encumbrance upon this land, nor give any reason why the sheriff has not sold it to satisfy the judgment and execution.

Suppose, then, the allegations of the bill to be true with regard to the other personal and real estate of the judgment debtor, that he has fraudulently conveyed it for the purpose of defeating this judgment, if he is still in possession and is the owner of property enough to satisfy the judgment, and which has been levied upon, and is at the legal disposal of the sheriff for the purpose, the

assistance of a court of equity is not necessary to aid the complainant in his legal remedy to obtain satisfaction of his judgment. This is the only ground upon which the jurisdiction of a court of equity can be invoked; and as the complainant does not show that he stands upon this ground, he cannot maintain his bill. The bill is radically defective. Admitting all its facts to be true, it cannot be maintained. The demurrer is therefore well taken, and the decree of the Chancellor overruling the demurrer must be reversed with costs.

Decision reversed by the following vote:

*For affirmance*—None.

*For reversal*—CHIEF JUSTICE, Judges ARROWSMITH, COR-NELISON, HAINES, HUYLER, POTTS, RISLEY, VALENTINE, VRE-DENBURGH, WILLIAMSON, WILLS.